Jeffrey C. Block (JB-0387)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockesq.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSSELL GARRETT, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:20-cv-01026 |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| CPI AEROSTRUCTURES, INC, DOUGLAS MCCROSSON and VINCENT PALAZZOLO, | |
| Defendants. | Jury Trial Demanded |

Plaintiff Russell Garrett ("Plaintiff"), by and through his attorneys, alleges upon personal

knowledge as to his own acts, and upon information and belief as to all other matters, based upon

the investigation conducted by and through his attorneys, which included, among other things, a

review of documents filed by Defendants (as defined below) with the United States Securities

and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and

other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or

otherwise acquired CPI Aerostructures, Inc. ("CPI" or the "Company") common stock between

May 15, 2018 and February 14, 2020, inclusive (the "Class Period"). This action is brought on

behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.     CPI is a U.S. manufacturer of structural assemblies, for fixed wing aircraft, helicopters, and airborne Intelligence Surveillance and Reconnaissance pod systems in both the commercial aerospace and national security markets. CPI also is a prime contractor to the U.S. Department of Defense, primarily the Air Force. In conjunction with its assembly operations, CPI provides engineering, program management, supply chain management, and MRO services.

3.     CPI filed false and misleading financial statements for the seven consecutive quarters prior to Q4 2019 – misleading investors by attributing record revenues and profits to the business acumen and strategic vison of the Company's senior management. By doing so, they managed to run up the share price of the Company, reaching near record highs in the summer of 2019.

4.     The first indication of wrongdoing occurred on February 8, 2019, when CPI filed a Form 8-K with the SEC disclosing that during the three and nine months ended September 30, 2018, the Company's revenue was overstated by $900,000 to $950,000, net income was overstated by $725,000 to $775,000, and as a result, earnings per share were overstated by $0.09 per share for each such period. CPI also disclosed that management determined that the Company had a material weakness in its internal control over financial reporting and that its disclosure controls and procedures were not effective.

5.     CPI attributed these overstatements to "errors" in the billing process. This explanation did not placate investors, however, and the Company's stock price fell $0.59 per share, or 8.51%, to close at $6.34 per share on February 8, 2019.

6.     The next shoe dropped on February 14, 2020. CPI issued a press release, entitled "CPI Aerostructures to Restate Fiscal 2018 and Year-to-Date Fiscal 2019 Financial Statements as a Result of Errors in Connection With Revenue Recognition Under ASC Topic 606," which announced that its financial statements for the fiscal year 2018 and year-to-date for 2019 could no longer be relied upon.

7.     On this news, CPI's stock price fell $1.80 per share, or 26.99%, to close at $4.87 per share on February 14, 2020.

8.     Defendants were motivated to and did conceal the true operational and financial condition of CPI, either intentionally or through indifference. Doing so enabled Defendants to deceive the investing public regarding CPI's business, operations, management, and the intrinsic value of CPI's common stock, causing Plaintiff and other members of the Class to purchase CPI common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, defendants, jointly and individually took the actions set forth herein.

**JURISDICTION AND VENUE**

9.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

11.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C.

§ 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

13.    In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.    Plaintiff Russell Garrett is a resident of Chesapeake, Virginia. He acquired and held shares of CPI at artificially inflated prices during the class period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

15.    Defendant CPI is engaged in the production of structural aircraft parts principally for the United States Air Force and other branches of the United States armed forces, either as a prime contractor or as a subcontractor. According to the Company's website, CPI's mission is "to exceed the expectations of our customers by manufacturing the highest quality aerospace structural products ….". CPI common stock trades on the New York Stock Exchange under the ticker "CVU."

16.    Defendant Douglas McCrosson ("McCrosson") was named President and Chief Executive Officer ("CEO") of CPI in March 2014. Prior to that, McCrosson was CPI's Director of Business Development and Vice President of Operations.

17.    Defendant Vincent Palazzolo ("Palazzolo") was named Chief Financial Officer ("CFO") of CPI in May 2014. Palazzolo left the Company in November 2019, and was replaced by Dan Azmon.

18.    Collectively, McCrosson and Palazzolo are referred to throughout this complaint as the "Individual Defendants."

19.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## RELEVANT NON-PARTY

20.     Dan Azmon ("Azmon") was named CFO of the Company on November 13, 2019. Previously, Azmon served as vice president, controller, and principal accounting officer of L3 Technologies, Inc. The Company announced Azmon's resignation on February 14, 2020.

## SUBSTANTIVE ALLEGATIONS

21.     CPI was founded in 1980 by Arthur August, a 25-year veteran of the Grumman Corporation. Initially conceived as a technical consulting firm, CPI soon began manufacturing structural components for U.S. military aircraft under contract to the U.S. government. By the late 1980's, CPI was also providing structural components for civil aircraft in the commercial market.

22.     Today, CPI provides program management, final assembly, kitting, and other value-added services to support aircraft production at any stage of the manufacturing life cycle.

CPI acts as both a prime contractor and subcontractor. CPI provides components and substructure for some of the premier military aircraft utilized by the U.S. Air Force.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

23.     May 15, 2018, CPI filed its financial report for the first quarter of 2018 with the SEC on form 10-Q. The filing reported that CPI had revenues of $18.2 million, a gross profit of $4.0 million and net income of $1.3 million for the quarter. In the press release announcing the filing, Defendant McCrosson advised investors that:

> ***[CPI] delivered a fourth consecutive quarter of profitability on the strength of strong operational performance and continued cost control*** …. As expected, revenue declined year-over-year and was attributable to lower revenue from F-16 wing components and E-2D outer wing panel kits that offset higher revenue from our Next Generation Jammer pod program with Raytheon and our T-38 Pacer Classic III prime contracts with the U.S. Air Force. The decrease in F-16 program revenue is a timing issue and we expect revenue from this program to grow in fiscal 2018. Revenue for our E-2D wing panel kit program experienced a decline as we transition from one multi-year contract to an anticipated new multi-year contract expected later this year.

24.     The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by attributing its profitability to "operational performance" and "cost control" without disclosing that the Company's revenues were artificially inflated due to a purported "error." in the Company's billing process.

25.     The Company's 2018 Q1 also attested to the effectiveness of CPI's disclosure controls and procedures, stating:

### Evaluation of Disclosure Controls and Procedures

The Company's management has established disclosure controls and procedures designed to ensure that information it is required to disclose in the reports that it files or submits under the Securities Exchange Act of 1934, as amended (the "Exchange Act") is recorded, processed, summarized and reported within time periods specified in the Securities and Exchange Commission rules and forms. Such disclosure controls and procedures include, without limitation, controls and

procedures designed to ensure that information the Company is required to disclose in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management to allow timely decisions regarding required disclosure.

Based on an evaluation of the Company's disclosure controls and procedures as of June 30, 2018 made by management, under the supervision and with the participation of the Chief Executive Officer and Chief Financial Officer, the Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) promulgated under the Exchange Act) were effective as of June 30, 2018.

26.     The quarterly report contained certifications signed by Defendants McCrosson and Palazzolo attesting to the accuracy and completeness of the Company's financial and operational reports, which state:

## Certification

1.     I have reviewed this Quarterly Report on Form 10-Q of CPI Aerostructures, Inc;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared:

(b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision,

to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for the external purposes in accordance with generally accepted accounting principles:

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's first fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and to the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have significant role in the registrant's internal control over financial reporting.

27.     The above-described statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q1 2018 was not accurate or reliable.

28.     On August 9, 2018, CPI filed its financial report for the second quarter of 2018 with the SEC on Form 10-Q. The Company reported a strong year-over-year financial performance, with revenues of $20.3 million as compared to $16.7 million, gross profit of $4.6 million as compared to $3.7 million, and net income of $1.3 million as compared to $0.8 million.

29.     In the press release announcing the filing, a "Note" advised investors that:

Effective January 1, 2018, *the Company adopted Accounting Standards Codification Topic 606 Revenue from Contracts with Customers ("ASC 606")* using the modified retrospective method. None of the Company's contracts'

revenue recognition changed materially as a result of the adoption of ASC 606.

30.     In addition, the press release contained statements by Defendant McCrosson regarding the Company's financial performance, including the following to investors:

> We delivered another solid performance in the second quarter highlighted **_by higher revenue sequentially and year-over-year and the fifth consecutive quarter of EPS profitability that underscores our growing reputation as an efficient supply chain partner to the defense industry_** and continued focus on operational excellence …. We are particularly pleased to deliver growth for the quarter and first half of the year that exceeded our plans in light of the uncertain defense spending environment entering 2018 that was resolved with the recent passage of the 2018 Omnibus Spending Bill.

31.     The statements described in ¶¶ 28-30 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by attributing CPI's growth in revenue to the Company's "growing reputation" and failing to disclose that its reported revenues were artificially inflated due to a purported "error" in the Company's billing process, and errors in the recognition of revenue from contracts with CPI's customers under ASC Topic 606.[1]

32.     In addition, the Company's Q2 for 2018 attested to the effectiveness of CPI's disclosure controls and procedures, and contained certifications by Defendants McCrosson and Palazzolo which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CPI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q1 2018, discussed supra at ¶¶ 25-26.

---

[1] ASB Topic 606 is an FASB accounting standard.
https://www.fasb.org/jsp/FASB/FASBContent_C/CompletedProjectPage&cid=1175805486538

33.     These statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q2 2018 was not accurate or reliable.

34.     On November 13, 2018, CPI filed its financial report for the third quarter of 2018 with the SEC on Form 10-Q. In this filing, the Company reported "another strong quarter," although most financial metrices were slightly down on a year-over-year basis. CPI reported revenues of $19.9 million, gross profit of $4.8 million and net income of $1.3 million.

35.     In the press release announcing the financial report, McCrosson explained the slight year-over-year down-turn and described the company's financial performance as strong.:

> *We are pleased to report another strong quarter of execution, profitability and positive cash flow while progressing business development initiatives that yielded a 23% sequential increase in total backlog.*

36.     The statements described in ¶¶ 34-35 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by failing to disclose that its "profitability" and reported revenues were artificially inflated due an error in its "billing process," as well as errors in the recognition of revenue from contracts with CPI's customers under ASC Topic 606.

37.     In addition, the Company's Q3 for 2018 attested to the effectiveness of CPI's disclosure controls and procedures, and contained certifications by Defendants McCrosson and Palazzolo which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CPI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q1 2018, discussed supra at ¶¶ 25-26.

38.     These statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q3 2018 was not accurate or reliable.

39.     On April 1, 2019, CPI filed its financial report for the fourth quarter and full year 2018 with the SEC. The Company reported strong year-over year growth in a variety of financial metrics, with revenues of $26.5 million (up 11%); and gross profit ($5.8 million– up 5%). In the press release accompanying the financial report, McCrosson advised investors that:

> [The year] 2019 is off to a ***very strong start*** with new programs recently announced with long-time customers Sikorsky, Lockheed Martin, and Northrop Grumman and strong quote activity across the defense and commercial segments of our business. With initial production deliveries scheduled for 2019, execution on the Lockheed Martin and Northrop Grumman programs, in particular, are especially fundamental to our revenue growth this year.
>
> ***Having laid the foundation for our future growth through organic as well as inorganic initiatives in 2018, we are focused on executing across our entire portfolio in 2019 while also pursuing an active M&A strategy to supplement our organic growth.*** With defense spending stable near-term and macro drivers that favor positive spending trends longer-term, momentum in new awards and a strengthened balance sheet, we have the elements in place for both top and bottom line growth 2019.

40.     The statements described in ¶ 39. were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by failing to disclose that its reported revenues were artificially inflated due to purported "errors" in the recognition of revenue from contracts with CPI's customers under ASC Topic 606. In addition, these statements misled investors by attributing its "strong start" and strong foundation on business initiatives – when at least part of the company's apparent success was the result of artificially inflated revenues.

41.     In addition, the Company's financial report for fourth quarter and full year 2018 attested to the effectiveness of CPI's disclosure controls and procedures, and contained

certifications by Defendants McCrosson and Palazzolo which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CPI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q1 2018, discussed supra at ¶¶ 25-26.

42.     These statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for fourth quarter and full year 2018 was not accurate or reliable.

43.     On May 10, 2019, CPI filed its financial report for the first quarter of 2019 with the SEC on Form 10-Q. In this filing, the Company reported: Revenue of $25.6 million (up 41% from the prior year), Gross Profit of $5.4 million (up 35%) and Net Income of $1.7 million, (up 31%).

44.     In the press release announcing the filing, McCrosson touted this purportedly strong quarter to investors.

> [The year] 2019 is off to a very strong start with ***higher revenue, gross profit and net income year-over-year and excellent execution on key strategic priorities for the year.*** We completed the consolidation of Welding Metallurgy, Inc. ("WMI") into our facility on schedule and we have been hitting our customer's production milestones on the new programs that cumulatively underpin our growth expectations this year and beyond.
>
> ***Revenue growth in the quarter was driven predominantly by the increase in production rate of our Next Generation Jammer Pod program for Raytheon and revenue from our WMI subsidiary.*** We also had a strong booking quarter for both CPI Aero and WMI. Our consolidated shipping backlog increased by approximately 14% during the quarter and now is approximately $134 million, for a book-to-bill ratio of approximately 2.0 during the quarter.

45.     The statements described in ¶¶ 43-44 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and

prospects. Specifically, Defendants attributed its increased revenues to "excellent execution on key strategic priorities" and an "increased production rate of our Nest Generation Jammer Pod program." The Defendants misled investors by failing to disclose that its reported revenues were artificially inflated due to purported "errors" in the recognition of revenue from contracts with CPI's customers under ASC Topic 606.

46.     In addition, the Company's quarterly report for Q1 2019 attested to the effectiveness of CPI's disclosure controls and procedures, and contained certifications by Defendants McCrosson and Palazzolo which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CPI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q1 2018, discussed supra at ¶¶ 25-26.

47.     The above described statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q1 2019 was not accurate or reliable.

48.     On August 8, 2019, CPI filed its financial report for the second quarter of 2019 on Form 10-Q with the SEC. This report claimed revenues of $23.2 million, up almost 3% from Q2 2018. Gross profit also increased slightly by about 1% ($5.0 million vs. $43.6 million in the prior quarter).

49.     In the press release accompanying the filing, Defendant McCrosson advised investors that:

> ***We delivered solid, year-on-year growth in revenue and net income in the second quarter that reflects continued operational execution and progression on our strategic priorities*** …. Similar to the first quarter, bookings at CPI Aero and WMI were strong, and product sales backlog now stands at $153.2 million, up 14 % from the end of the first quarter. We also continued to execute on our Next Generation Jammer pod program, as well as our three new key programs that are central to our

growth expectations in 2019 and support a multi-year growth trajectory.

50.     The statements described in ¶¶ 48-49 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants attributed its increased revenues to "continued operational execution and progression on our strategic priorities." The Defendants misled investors by failing to disclose that its reported revenues were artificially inflated due to purported "errors" in the recognition of revenue from contracts with CPI's customers under ASC Topic 606.

51.     In addition, the Company's quarterly report for Q2 2019 attested to the effectiveness of CPI's disclosure controls and procedures, and contained certifications by Defendants McCrosson and Palazzolo which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CPI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q1 2018, discussed supra at ¶¶ 25-26.

52.     The above described statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q2 2019 was not accurate or reliable.

53.     On November 8, 2019, CPI filed its financial report for the third quarter of 2019 with the SEC on Form 10-Q. The Company again reported strong year-over-year growth in key financial metrics, with revenues of $25.7 million compared to $19 million (an increase of 35%) and gross profit of $5.0 million compared to $3.9 million (an increase of 28%).

54.     In the press release accompanying the filing, Defendant McCrosson advised investors that:

> ***Revenue growth in the quarter was driven principally by our WMI subsidiary and from our Northrop Grumman E-2D Advanced Hawkeye and Raytheon Next Generation Jammer - Mid Band programs.*** We continued to win new contracts at

a strong pace with the addition of several substantial awards and incremental new contracts for WMI and total backlog at September 30 is the highest in our history at $534 million," stated Douglas McCrosson, president and CEO of CPI Aero. "New contract momentum has continued into the fourth quarter, including an award from Raytheon to produce prototypes of a pod. We were also pleased to be recognized for our capabilities and expertise with the receipt last month of an Aviation Week Program Excellence Award for our work on Next Generation Jammer- Mid Band."

55.     The statements described in ¶¶ 53-54 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants attributed its increased revenues to its "WMI subsidiary and from our Northrop Grumman E-2D Advanced Hawkeye and Raytheon Next Generation Jammer - Mid Band programs." The Defendants misled investors by failing to disclose that its reported revenues were artificially inflated due to purported "errors" in the recognition of revenue from contracts with CPI's customers under ASC Topic 606.

56.     In addition, the Company's quarterly report for Q3 2019 attested to the effectiveness of CPI's disclosure controls and procedures, and contained certifications by Defendants McCrosson and Palazzolo which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CPI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q1 2018, discussed supra at ¶¶ 25-26.

57.     The above described statements were false and misled investors to believe that CPI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q3 2019 was not accurate or reliable.

**THE TRUTH EMERGES**

58.     On February 8, 2019, CPI disclosed that its financial statements for the three and nine months ended September 30, 2018 reported in its Form 10-Q could no longer be relied upon

due to an "error . . . in the Company's billing process." According to CPI, the alleged error inflated the Company's revenue and income before provision for income taxes, net income, and earnings per share for each such period. According to CPI:

> The identification of the error was made by management during the Company's review of the billing process for the year ended December 31, 2018 in connection with the preparation of the Company's 2018 financial statements. Management's preliminary conclusion is that the error was limited to one instance and that the effect of correcting the ***foregoing error in the Company's financial statements for the three and nine months ended September 30, 2018 is (i) a reduction of revenue and income before provision for income taxes of approximately $900,000 to $950,000, (ii) a reduction of net income of approximately $725,000 to $775,000 and (iii) a reduction of fully diluted earnings per share of approximately $ 0.09, for each such period.*** The error is not expected to have a material impact on the Company's balance sheet as of September 30, 2018 or the statement of cashflows for the three and nine months ended September 30, 2018.

59.     In addition, the Company reported material weaknesses in its internal controls:

> In connection with the restatement noted above, ***management has determined that a material weakness existed in the Company's internal control over financial reporting as of September 30, 2018. As a result, the Company's chief executive officer and chief financial officer have concluded that the Company's disclosure controls and procedures were not effective at the reasonable assurance level as of September 30, 2018.*** A discussion of the Company's plan to remediate the material weakness will be contained in the Company's Annual Report on Form 10-K for the year ended December 31, 2018, which the Company expects to file with Securities and Exchange Commission on or before its filing deadline.

60.     On this news, the Company's stock price fell $0.59 per share, or over 8.5%, to close at $6.34 per share on February 8, 2019, injuring investors.

61.     The next shoe dropped on February 14, 2020, when CPI announced that its financial statements for fiscal year 2018, the last three quarters of 2018, and the first two quarters of 2019 should no longer be relied upon due to errors in those financial statements relating to the Company's recognition of revenue from contracts with customers under ASC Topic 606. More specifically, CPI disclosed that:

[CPI] today announced that the Audit Committee of the Board of Directors of CPI Aero determined, based on the recommendation of management and in consultation with CPI Aero's independent registered public accounting firm, that the Company's financial statements included in its annual report on Form 10-K for the year ended December 31, 2018, quarterly reports on Forms 10-Q for the quarters ended March 31, 2018, June 30, 2018, and September 30, 2018, and quarterly reports on Forms 10-Q for the quarters ended March 31, 2019, June 30, 2019, and September 30, 2019 ***should no longer be relied upon due to an error in those financial statements relating to the Company's recognition of revenue from contracts with customers under ASC Topic 606. Similarly, the independent auditor's reports on the effectiveness of internal control over financial reporting for the year ended December 31, 2018, management's reports on the effectiveness of internal control over financial reporting, press releases, and investor communications describing the Company's financial statements for such periods should no longer be relied upon.*** The Company's cash flows from operations for the affected periods are not expected to be impacted.

The error was uncovered as part of the preparation of the Company's 2019 annual financial statements. After reconsideration of the terms of the Company's contracts with customers, ***Management's preliminary conclusion is that certain revenues and net income were recognized prematurely or inaccurately due to an incorrect application of generally accepted accounting principles. Therefore, previously reported revenue and net income are believed to have been overstated.*** The error is also expected to have an impact on the Company's balance sheets for the affected periods. Specifically, retained earnings and contract assets are believed to be overstated.

62.     In addition, the Company reported:

***Management has determined that a material weakness existed in the Company's internal control over financial reporting as of the end of each of the affected periods.*** The Company has reviewed its financial closing process and believes it has identified the corrective action necessary to remediate the cause of the error. The Company plans to include a discussion of the Company's plan to remediate the material weakness in its annual report on Form 10-K for the year ended December 31, 2019.

63.     The Company also announced that Chief Financial Officer Dan Azmon resigned from the Company, effective February 11, 2020. The Board of Directors appointed current director of financial planning and analysis, Thomas Powers, as acting chief financial officer.

64.     On this news, the Company's stock price fell $1.80 per share, or approximately 27%, to close at $4.87 per share on February 14, 2020, injuring investors.

65. The chart below, illustrates both the February 8, 2019 and February 14, 2020 stock drops:



**CLASS ACTION ALLEGATIONS**

66. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired CPI common stock between May 5, 2018 and February 14, 2020, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

67. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

68. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

  a. Whether the Exchange Act was violated by Defendants;

  b. Whether Defendants omitted and/or misrepresented material facts;

c.  Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.  Whether the price of the Company's stock was artificially inflated; and

f.  The extent of damage sustained by Class members and the appropriate measure of damages.

69.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

70.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

72.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.  The omissions and misrepresentations were material;

c.  The Company's common stock traded in efficient markets;

d.  The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.  Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts

and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

73.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

74.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

75.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

76.     On February 8, 2019, CPI announced that the Company had made "errors" in its billing process which resulted in an overstatement of revenue for the 9-month period ending September 30, 2018. The Company also disclosed material weakness in its internal control. As a result, CPI's stock price fell $0.59 per share, or over 8.5%, to close at $6.34 per share on February 8, 2019, injuring investors.

77.     On February 14, 2020, CPI announced that its financial statements for fiscal year 2018, the last three quarters of 2018, and the first two quarters of 2019 should no longer be relied upon due to errors in those financial statements relating to the Company's recognition of revenue from contracts with customers under ASC Topic 606. As a result, CPI's common stock dropped $2.12 per share or almost 12% in a single day of trading.

78.     These revelation of accounting improprieties contradicted statements made by Defendants during the Class Period and were a causal element of the concurrent decline in the Company's share price.

### Count One
### Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against CPI and the Individual Defendants)

79.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

80.     During the Class Period, Defendants CPI and the Individual Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

81.     Defendants CPI and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

82.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### Count Two
### Violation of § 20(a) of the Exchange Act
### (Against the Individual Defendants)

83.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

84.     The individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above in ¶¶ 23-57 which contained statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)     awarding compensatory and punitive damages in favor of Plaintiff and the other

class members against all Defendants, jointly and severally, for all damages sustained as a result

of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-

judgment interest thereon.

(c)     awarding Plaintiff and other members of the Class their costs and expenses in this

litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements;

and

(d)     awarding Plaintiff and the other Class members such other relief as this Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.


February 25, 2020                           Respectfully submitted,

                                            **BLOCK & LEVITON LLP**

                                            /s/Jeffrey C. Block
                                            Jeffrey C. Block  (JB-0387)
                                            260 Franklin Street, Suite 1860
                                            Boston, Massachusetts 02110
                                            (617) 398-5600 phone
                                            (617) 507-6020 fax